UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN RE:<br><br>    JOHN B. EVEREST and<br>    SUSAN E. EVEREST,<br><br>    Debtors. | Chapter 7<br><u>Case No. 10-21181</u> |
| WILLIAM H. HOWISON, in his Capacity as Chapter 7 Trustee of the Bankruptcy Estate of John B. Everest and Susan E. Everest.<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.<br><br>and<br><br>STATE OF MAINE, BUREAU OF REVENUE SERVICES,<br><br>    Defendants. | Adversary Proceeding<br><u>Case No. 12-02034</u> |

**DEFENDANT BANK OF AMERICA, N.A.'S POST-JUDGMENT CONSOLIDATED MOTIONS (1) FOR PARTIAL NEW TRIAL; (2) TO ALTER OR AMEND JUDGMENT RECONSIDERING THE ORDER DIRECTING SALE OF PROPERTY; (3) TO CORRECT CLERICAL ERRORS IN ORAL RULING AS CONCERNS USE OF THE TERM "ANY SALE"; AND (4) FOR FURTHER FINDINGS OF FACT AND CONCLUSIONS OF LAW**
[F.R. Bankr. P. 9023, 9024, AND 7052]

COMES NOW Defendant, Bank of America, N.A. ("BANA") by and through undersigned counsel and submits the above titled Motions as follows:

1.    The above captioned matter proceeded to hearing on November 12, 2013 at which time Judge James B. Haines ruled in favor of BANA and against

[1]

William H. Howison, the Chapter 7 Trustee of the Bankruptcy Estate of John B. Everest and Susan E. Everest ("Trustee").

2. Judge Haines' Ruling provided that by virtue of the Court's final judgment in the Case of BANA v. Everest (Biddeford District Court Case No. RE-09-60) (the "Junior Foreclosure Judgment"), BANA had a valid lien on the proceeds of a public foreclosure sale (not yet scheduled, published, or completed) pursuant to the foreclosure judgment rendered in the case of People's United Bank ("PUB") v. Edwards, Biddeford District Court Case No. RE-10-244 (the "Senior Foreclosure Judgment") that was superior to any claim of the Trustee to those proceeds.

3. The Trustee timely appealed Judge Haines' ruling to the United States District Court for the District of Maine as case No.2:14:CV-05-DBH (Hornby, J).

4. That appeal resulted in a reversal of Judge Haines' ruling, after reference to the Law Court for an Answer to Judge Hornby's Certified Question (Law Court Docket No. FED-14-263).

5. The matter was remanded to the United States Bankruptcy Court on March 27, 2015.

6. The remand Order (Docket No. 57) did not specify the procedure to be utilized by the Bankruptcy Court on remand, nor did it direct judgment to be entered in favor of the Trustee regarding his requests to compel sale of the Property.

7. Following remand, this court asked BANA and the Trustee for memoranda in support of their respective positions regarding how the Bankruptcy Court should proceed.

8. The Trustee argued, without any binding (or persuasive) authority, that the Bankruptcy Court was obliged to enter judgment in his favor without re-opening the hearing to consider BANA's proffered evidence in support of its position that BANA's 2011 payment to PUB constituted a waiver of the PUB foreclosure as a matter of law pursuant to 14 MRS § 6323 (a position first asserted by BANA in its initial Objection to the Trustee's 2012 Motion to complete the PUB sale in the Trustee's Bankruptcy Case (Docket No. 46).

[2]

9.     BANA argued that Judge Haines' ruling, **and** the appellate reversal of his ruling settled only the *threshold* issue of BANA's claim to proceeds from the not-yet-held sale under the Senior Foreclosure Judgment, without having reached or considered any other issue asserted by BANA, including any factual or legal issue pertaining to the July 2011 payment by BANA of funds to PUB (whether the payment and acceptance of the funds constituted a redemption of the Senior Mortgage, and whether the acceptance of those funds constituted a waiver of foreclosure under Maine law. Indeed, the Law Court admitted it did not consider the matter because the District Court had not certified the question. "This question is not before us. We have been called upon only to determine Bank of America's rights to excess proceeds from the senior foreclosure sale, and we do not reach the issue of Bank of America's rights pursuant to section 6323." *Everest v. Bank of America, N.A.*, 2015 ME 19, ¶ 24, n. 1, 111 A.3d 655 (2015).

10.    BANA argued that the Bankruptcy Court was obliged to re-open the evidence to consider the circumstances of the payment by BANA to PUB, as well as the Maine State Law ramifications of the acceptance of the funds by PUB after the entry of its foreclosure judgment, and before the sale.

11.    The Court convened a hearing on June 9, 2015, at which it was announced that BANA would not be permitted to re-open its case, not be permitted to offer further evidence, and not be permitted to make a specific proffer of what further evidence would show, deeming the evidence as irrelevant, or that the opportunity to have presented such evidence was passed, and could not be revived on remand.

12.    The Court rejected BANA's arguments that Judge Haines' Ruling was a threshold matter, that evidence pertaining to the payments and acceptance should be permitted, and that neither appellate court had ruled on matters not reached by Judge Haines.

13.    BANA's request to expand on its proffer and to make an Offer of Proof were denied.

14. The Court entered judgment in favor of the Trustee, and against BANA at the June 9, 2015 hearing.

15. The Court erred by (1) disallowing BANA to re-open its case and introduce evidence pertaining to the July 2011 payments to PUB; and (2) argue the legal significance of those payments, namely that their acceptance constituted a waiver of the Senior Foreclosure. BANA requests that the Court reconsider these rulings.

16. The Court's error unjustly prevents BANA from supporting a request that the Bankruptcy Court certify the issues concerning waiver of foreclosure and redemption to the Law Court because material factual disputes about the payment and acceptance which would have been resolved by the re-opening the hearing still remain.

17. The Court erred in ordering BANA to publish and conduct a public foreclosure sale pursuant to the Senior Foreclosure Judgment because such conduct will run afoul of Maine statute requiring a Motion to do so and state court determination of good cause. The Court should reconsider its ruling and alter the Judgment to omit any direction to BANA with regard to the Senior Foreclosure sale. There is no Maine case law supporting the Court's choice to order the publication and sale by a successor to the mortgagee, whose contention is that the junior mortgagee redeemed the mortgage and necessarily waived foreclosure by operation of law.

18. The Court made what amounted to a clerical error during the recitation of its Oral Ruling (having denied BANA's Motion for a written ruling) when it referred on two occasions to "any sale."

19. BANA is informed, believes, and thereupon asserts that the Court meant to refer to the Senior Foreclosure Sale which was the subject of Judge Haines' ruling, rather than "any sale."

20. The Court made no specific findings of fact or conclusions of law pertaining to what act or omission on BANA's part constituted a waiver sufficient to forfeit its ability to put on evidence in light of the reversal of Judge

Haines' ruling. This motion respectfully requests findings of fact and conclusions of law concerning the Court's ruling in that regard.

21. The Court made no findings of fact or conclusions of law concerning the payment of funds to PUB by BANA, and the acceptance of those payments by PUB. This Motion respectfully requests that the Court enter findings of fact and conclusions of law concerning the payment of funds by BANA to PUB, the acceptance of funds by PUB from BANA, and their legal significance, if any regarding the Senior Foreclosure.

22. The Court made no findings of fact or conclusions of law regarding the effect of Maine District Court Judge Janelle's denial of BANA's Motion to Vacate the Senior Foreclosure Judgment. BANA is informed and believes that the Court found Judge Janelle's ruling to be controlling as to the legal effect of the BANA payment to PUB.

23. The Court erred if it, in fact, found Judge Janelle's ruling was anything other than a finding that BANA was without cause to vacate the judgment, having no legal import to BANA's continued assertions of redemption and waiver.

24. Pursuant to F.R. Bankr. P. 9023, good cause existed and exists for the Court to order a new trial on the issue of the BANA payment to PUB, and whether a redemption or other waiver of the senior foreclosure resulted therefrom.

25. Pursuant to F.R. Bankr. P. 9023, good cause existed and exists for the Court to Reconsider the portion of its Judgment that directs BANA to proceed with a foreclosure sale as this matter is one more appropriate for resolution by the Maine State Courts, or for Certification (which would require evidence regarding the BANA-PUB payment in order to eliminate the material disputes regarding the payments).

26. Pursuant to F.R. Bankr. P. 9024, good cause exists for the Court to correct the errors in the June 9, 2015 Oral ruling regarding the uses of the term "any sale" as alleged herein.

27. Pursuant to F.R. Bankr. P. 7052, good cause exists for the issuance of Findings of Fact and Conclusions of Law as specified herein. BANA respectfully requests that the Court grants BANA's Motion for their issuance.

## I. AUTHORITY

### A. Motion for New Trial and Reconsideration.

F.R. Bankr. P. 9023 provides:

Except as provided in this rule and Rule 3008, Rule 59 F.R.Civ.P. applies in cases under the Code. A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment.

F.R.Civ.P. 59 provides in pertinent part, as follows:

(a) IN GENERAL.

(1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:
. . .

(B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.

(2) Further Action After a Nonjury Trial. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.
. . .

(d) NEW TRIAL ON THE COURT'S INITIATIVE OR FOR REASONS NOT IN THE MOTION. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

(e) MOTION TO ALTER OR AMEND A JUDGMENT. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

**B.     Motion to Correct Clerical Errors in Judgment.**

F. R. Bankr. P. 9024, concerning requests for correction of errors in Judgments. It states, in pertinent part, as follows:

Relief from Judgment or Order

Rule 60 F.R.Civ.P. applies in cases under the Code except that . . . (immaterial exceptions omitted.

F. R. Civ. P. 60 states, in pertinent part as follows:

(a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice.

BANA believes the Court misspoke during the recitation of the Oral Ruling when it used the term "any sale". In the event that BANA is correct, it requests that this be corrected.

**C.     Motion for Further Findings.**

F. R. Bankr. P. 7052 states in pertinent part as follows:

Rule 52 F.R.Civ.P. applies in adversary proceedings, except that any motion under subdivision (b) of that rule for amended or additional findings shall be filed no later than 14 days after entry of judgment. In these proceedings, the reference in Rule 52 F.R.Civ.P. to the entry of judgment under Rule 58 F.R.Civ.P. shall be read as a reference to the entry of a judgment or order under Rule 5003(a).

F. R. Rule Civ. P 52 states, in pertinent part as follows:

Rule 52. Findings and Conclusions by the Court; Judgment on Partial Findings
(a) FINDINGS AND CONCLUSIONS.
(1) In General. In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court. Judgment must be entered under Rule 58
. . .
(3) For a Motion. The court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion.

(b) AMENDED OR ADDITIONAL FINDINGS. On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

BANA requests Findings of Fact and Conclusions of Law as listed above, even though a later challenge can still be made.

## II.    SUMMARY OF MOVANT'S REQUESTS

A.    BANA requests a partial new trial regarding the legal effect of its July 2011 payment of funds to PUB.  F.R.Civ.P. 59 specifically authorizes the Court to open the judgment and take additional testimony.  Here, additional evidence can also presumably be admitted via supplemental stipulations, or limited evidentiary hearing.  The basis for BANA's request is that Judge Haines' original ruling (reversed on appeal) concerned only the threshold issue of whether BANA had a right to a distribution of proceeds of the senior foreclosure sale.  The record does not demonstrate that Judge Haines considered any other issues.  Accordingly, BANA contends that the Court erred in its findings that:

1.    BANA waived its right to argue that its payment to PUB for the senior mortgage constituted a redemption or waiver of foreclosure by operation of law, or that PUB's acceptance of funds during the foreclosure period constituted a waiver of foreclosure by operation of law.

2.    That the appellate courts were empowered to reach, could reach, or did reach any issues other than the narrow, threshold ruling made by Judge Haines concerning the right to proceeds from the yet-to-occur senior foreclosure sale.

B.    BANA requests that the Court alter and amend the Judgment as follows:

1.    Revise Paragraph One on Page Two to read:

"**ORDERED, JUDGED and DECREED** that the rights of the parties to proceeds of a public foreclosure sale pursuant to the Senior Judgment, should one be authorized are as determined . . ." thus deciding the "lien on proceeds"

[8]

argument regarding the Senior Foreclosure Judgment sale, striking the provisions mandating the sale.

    2.    Strike Paragraph Two on Page Two, and Paragraphs One, Two, and Three on Page Three.

    C.    That the Court alter and amend its June 9, 2009 Judgment Order by recognizing the appropriateness of "abstention", thus permitting the State Court to decide whether a foreclosure sale is required, and the legal significance, if any, of the acceptance of funds by PUB after the redemption period but before sale.

## III.    ARGUMENT

### A.    Redemption, Waiver, and The Court's Conflicting Order.

With respect, although the Court rejected the above theories, the crux of this matter remains that Judge Haines did not reach the issue of what, if any, effect BANA's payment to PUB had on the senior foreclosure judgment. Simply put, all parities acquiesced to the senior foreclosure sale so long as BANA's junior mortgage interest was going to be honored, regardless of whether it was considered to be second or third. Removing Judge Haines' disposition from the possible outcomes of any foreclosure outcome(s) (as the appellate Courts have done) should have re-opened the question of what the other possible outcomes were. It did not.

Further, this Court's ruling in its Declaratory Judgment places BANA in in a legal quagmire. BANA must, in essence, now run afoul of 14 MRS § 6323(1) by publishing and conducting a public foreclosure sale after the prescribed deadline without having moved the state court for permission to do so. This and other non-bankruptcy state law issues are of sufficient weight so as to give this Court pause to reconsider whether these issues belong before the Maine State Court in their entirety, or whether this Court should follow Judge Hornby's example by recognizing that (should the proffer be allowed) this matter is appropriate to certify the broader and more dispositive questions to the Maine Supreme Judicial Court should this Court still desire to retain the matter.

[9]

This Court is given broad discretion to take the action requested "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." F.R.Civ.P. 59(a)(1)(B). In a nonjury trial, the Court may open judgment to take additional testimony, make amended findings of fact and conclusions of law (or make new ones), and direct entry of a new judgment. F.R.Civ.P. 59(a)(2). "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). Ultimately, the Court has the obligation to ensure justice is done. *McHargue v. Stokes Div. of Pennwalt Corp.*, 912 F.2d 394, 396 (10th Cir. 1990).

Here the Court entered judgment without allowing evidence to be proffered pertaining to the circumstances of what, after remand, became a critical underlying issue in this matter, namely the effect of PUP's acceptance of funds after judgment, and the running of the redemption period; but before sale. While 14 M.R.S. § 6323 is not as lenient as statutory redemption in other jurisdictions,[1] it does allow discretionary redemption and waiver *prior to sale*. Moreover, the Court has ordered BANA to bypass Maine statutory requirements mandating state court permission, coupled with a showing of good cause, to publish or conduct a tardy sale. Accordingly, the Court can and should reopen the Judgment. Neither the Appellate Court, nor the Law Court reached the issue of whether BANA's payment to PUB during the senior foreclosure amounted to a redemption that operated as a waiver of foreclosure under 14 M.R.S. § 6323. BANA had continuously addressed its tender of funds, and their acceptance by PUB before the appellate courts and upon remand. In 2013, Judge Haines chose only to analyze the threshold issue regarding whether BANA would be entitled to any proceeds in the hypothetical sale pursuant to the Senior Foreclosure Judgment.

---

[1] *See e.g. MERS v. Montoya et al.*, 144 N.M. 264, 269 (2008) (construing legislative intent to allow junior mortgagee whose mortgage was foreclosed upon to redeem mortgage following sale of property). "One of the purposes of the redemption statute is to give the property owner, or certain others listed under the redemption statute, a reasonable opportunity to redeem the property. *Id.* at 266 (internal quotations omitted).

Contrary to the Court's finding, the issue of redemption and waiver was always before the Court and suitable for in-depth examination after remand. The issue was raised in BANA's 2012 Opposition to the Trustee's Motion to Compel the Sale of the Property Free and Clear of any Liens or Encumbrances (Bankruptcy Case, Docket No. 46). Paragraph 15 specifically reminded the Trustee and the Court that "[BANA], exercising its rights under 14 M.R.S.A. § 6205, became the owner of Everest's obligation to [PUB] . . . and received and [sic] assignment of [PUB's] mortgage and Judgment,,," See *Ventura v. Kyle*, 63 F. Supp. 3d 1001 ¶ 5 (D. Minn. 2014) (noting parties must present arguments before a Judgment to succeed on Rule 52 or 59 motion). BANA presented these arguments before the Court's Judgment. The Court nevertheless prevented BANA's proffer. The Court instead concluded that BANA *waived* its arguments, thus concluding that BANA accomplished neither a redemption of the Senior Mortgage, nor a waiver of the Senior Foreclosure. It then compelled BANA to comply with state law to complete the sale under the Senior Foreclosure Judgment despite not being able to do so without motion and allowance.

The Court's ruling is in direct contrast with the legislative intent of 14 MRS § 6323 (leaving encouraging reinstatement, redemption and waiver within the sole discretion of the mortgagee). Thus it amounts to an error of law. *See e.g. In re Zumbro*, No. 09-11145, 2012 WL 1155378, at *2 (Bankr. S.D. Ga. Mar. 29, 2012) subsequently aff'd, 536 F. App'x 991 (11th Cir. 2013) (granting motion to reconsider judgment where judge's incorrect assumption as to character of debt amounted to manifest error of law).

    **B.**    **Issues Appropriate for Certification Notwithstanding the Exclusion of Evidence BANA Attempted to Proffer.**

As argued by the Trustee while persuading the Appellate Court to certify the limited question of the proceeds of the hypothetical senior foreclosure sale to the Law Court, this Court's judgment as to the disposition of the Property rests, and rested solely on state law. See *Butner v United States*, 440 U.S. 48, 54-55 (1979). Although "applicable nonbankruptcy law" is not limited solely to

[11]

otherwise applicable state law, determination of relative rights in property and the foreclosure of real property are always uniformly governed by state law as stated in *In re Stephens*, 221 B.R. 290, 294 (Bankr. D. Me. 1998) (citing *Patterson v. Shumate*, 504 U.S. 753, 758 & n.2 (1992)). "A federal court . . . should normally decline to speculate on such a question of local doctrine," *Delahanty v. Hinckley Jr.*, 845 F.2d 1069, 1070 (D.C. Cir. 1988), or "make bold departures in areas of law that [it has] no responsibility for developing." *Afram Export Corp. v. Mettalurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir. 1985). Federal courts should not speculate on the direction of state law, nor is it the place to "press innovative theories of state law." *Cima v. WellPoint Health Networks, Inc.*, 556 F.Supp.2d 901, 906-907 (S.D. Ill. 2008) (quoting *Anderson v. Marathon Petrol. Co.*, 801 F.2d 936, 942 (7th Cir. 1986).

    Now, after remand, the Court has again entered rulings based solely upon state law (including law regarding tardy sales) which the Maine Supreme Judicial Court is now addressing on what appears to be first impression. By its judgment, the Court has found that (1) BANA - in its capacity as the buyer/redeemer of the senior foreclosure judgment - **must** publish and conduct a foreclosure sale without further ruling or guidance from the state court; (2) that the expiration of the publishing and sale time limits passed long before Judge Haines' first ruling and that the state foreclosure statutes are thus irrelevant; **and** (3) that BANA's payment to PUB during the senior foreclosure did not constitute a redemption that operated as a waiver of foreclosure under 14 M.R.S. § 6323.

    As the Trustee conceded, *there is no case law in Maine that requires a mortgagee to proceed to sale.* This is fatal to the Trustee's argument to compel the sale and to the Court's order to do the same. *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007) (advising that parties who assert novel theories of state law "must come forward with some authority to support their view that they have a right to the relief they seek [given that federal courts] have . . . limited discretion . . . with respect to untested legal theories

brought under the rubric of state law."). BANA asserts that there is no case in which a Maine Court has ruled that the pre-sale acceptance of funds by a mortgagee does not constitute a waiver. In fact, there is at least one case before the Law Court at the present time in which a mortgagor is contending that the failure to timely complete a sale itself constitutes a waiver of foreclosure.[2] Moreover, 14 M.R.S. § 6323 allows the mortgagee, "in its sole discretion," to allow the borrower to redeem or reinstate his or her loan *prior* to the public sale.

This case will be both ripe and appropriate for Certification once the record is complete with regard to evidence surrounding the payment of funds. The Court's finding that the right to present evidence or even make a proffer about those circumstances was waived and inappropriate for re-examination even on remand prevents BANA from being able to make the record clear enough for the Law Court to be able to offer guidance. In that manner, BANA is denied the opportunity to establish the prerequisite for Certification because the Court has frozen the record.

BANA has taken affirmative steps to assure that no party be prejudiced by any delay necessitated by its requests to examine the payment issues and "obligation to sell" issues after the remand. BANA continues to pay taxes on the property, continues to insure the property, and continues to secure and maintain the property. This ensures that the proceeds will still be available for the Trustee should the Maine Courts validate his claim after having a sufficient opportunity to review these novel, but state-law-specific issues.

The following questions would be Certifiable to the Law Court *and* determinative of the remaining issues (if this matter is partially reopened for the proffered area of evidence):

---

[2] *The Bank of New York Mellon v. Collins*, Docket No. YOR-14-558. The Law Court is awaiting the reply brief as of June 11, 2015.

[13]

1)	Did BANA's post-judgment, pre-sale payment to PUB constitute a redemption and waiver of foreclosure by operation of law despite the failed collateral attack on PUB's judgment?

2)	Does a foreclosing mortgagee's discretion under 14 MRS § 6323 include the ability to refuse to proceed with a sale pursuant to a valid foreclosure judgment?

3)	Does a foreclosing mortgagee's discretion under 14 MRS § 6323 include the ability to reinstate, redeem, or otherwise waive the foreclosure even if a successor to the mortgagee objects?

4)	Does the term "and all other rights of all other parties remain as if no foreclosure had been commenced" include a junior mortgagee who had not yet sold the mortgagor's equitable right to redemption upon which it foreclosed before the judgment in question was entered?

As successfully argued by Trustee in the Appellant Brief before the District Court at page 19:

> "As this Court has noted, [a] federal court may certify 'determinative' questions of state law when 'there are no clear controlling precedents in the decision of the [SJC].' 4 M.R.S.A. § 57; see also Me. R. App. P. 25(a); *Brown v. Crown Equip. Corp.*, 501 F.3d 75, 78 (1st Cir. 2007) (suggesting that 'determinative' is 'probably a short-hand for avoiding advisory opinions'). Moreover, 'there [should] be no dispute as to the material facts associated with the potentially determinative question or questions presented by the certification.' *N. River Ins. Co. v. Snyder*, 804 A.2d 399, 401 (Me. 2002).'The decision whether to certify lies within the sound discretion of the federal court.' *Gough v. E. Maine Dev. Corp.*, 172 F. Supp. 2d 221, 227 (D. Me. 2001) *Darney v. Dragon Prods. Co., LLC*, 640 F. Supp. 2d 117, 125 (D. Me. 2009).
>
> The Law Court, in its discretion, may decide to answer a certified question from the federal court if "(1) there is no dispute as to the material facts at issue; (2) there is no clear controlling precedent; and (3) our answer, in at least one alternative, would be determinative of the case." Brown v. Crown Equip. Corp., 960 A.2d 1188, 1192 (Me. 2008). If material facts are either in dispute or not before it, the Law Court may decline to answer a certified question. See *Jackson*

*Brook Inst., Inc. v. Me. Ins. Guar. Ass'n*, 861 A.2d 652, 654 (Me. 2004).

Here, (1) the parties do not dispute the material facts at issue; (2) there is no clear controlling precedent, particularly where the Law Court is now beginning to deal with some of these very issues; and (3) the Law Court's answer to the above certified questions would undoubtedly be determinative of this case.

**V.    CONCLUSION**

WHEREFORE the Defendant, Bank of America, N.A. requests this Court:

A.    Grant a partial new trial reopening the judgment for the purpose of conducting a factual inquiry into the circumstances and legal effect of BANA's July 2011 payment of funds to PUB;

B.    Alter or Amend its June 9, 2015 judgment as requested above, striking those portions directing BANA to publish and conduct a public foreclosure sale pursuant to the Senior Mortgage judgment;

C.    Correct the Oral Ruling of June 9, 2015 regarding the references to "any sale" if the Court agrees that these statements were erroneous;

D.    Grant BANA's request for Findings of Fact and Conclusions of Law as requested herein; and

E.    For such other and further relief as the Court may deem just and proper.

Dated: June 23, 2015

*/s/William A. Fogel*
William A. Fogel, Esq.
Attorney for Defendant
Bank of America, N.A.

William A. Fogel
477 Congress Street
Fifth Floor
Portland, ME 04101
(207) 523-3410
Fax (207) 517-2113
bill@fogel-lawyer.com

[15]